# CIRCUIT COURT OF THE CITY OF RICHMOND

Virginia Eye Institute, Inc.

v.

State Health Commissioner
and Central Virginia Health
Planning Agency

November 18, 1998

Case No. HI 722-3

BY JUDGE JAMES W. HALEY, JR.

Pursuant to Va. Code § 32.1-102.3, no medical facility "shall commence any project without first obtaining a certificate [of public need] issued by the Commissioner" of State Health. Va. Code § 32.1-102.1 defines "project" to include "an increase in the total number of operating rooms in an existing medical care facility."

The issue here for resolution is the validity of an administrative determination that Virginia Eye Institute's ("VEI") proposed expansion constitutes an increase in the number of operating rooms, with the resultant requirement of a certificate of public necessity ("COPN"), rather than the replacement of an existing operating room, as VEI maintains, which does not require a COPN.[1]

The procedural posture of the cause is that of an appeal from the decision of an administrative officer, affirmed by the State Health Commissioner ("Commissioner"), pursuant to Va. Code § 9-6.14:15, *et seq.*, of the Virginia Administrative Process Act.

Established in 1987, VEI is an out-patient surgical hospital, dedicated to ophthalmic surgery. At present, as the administrative officer stated "VEI has

---

[1] VEI's project will cost less than $5 million, a figure triggering the necessity of a COPN under all circumstances. Va. Code § 32.1-102.2.

two general purpose operating rooms, one special procedure operating room, and two rooms with laser units, where laser surgery is performed." (Opinion of Raymond O. Perry, Adjudication Officer, p. 00016.) The court concludes that this finding constitutes an admission by the Commissioner that VEI presently uses five rooms as operating or surgery rooms. If the existing room where laser surgery is replaced by a new general purpose operating room, VEI will, of course, no longer use the present laser surgery room for operating or surgical purposes.

The Commissioner determined that VEI could, in fact, *replace* the existing "special procedure operating room" with a new "general purpose operating room" without a COPN. However, the Commissioner concluded that the construction of a general purpose operating room cannot be considered a "replacement" of an existing laser surgery room but is rather an addition of an operating room, thus triggering the requirement of a COPN. The Commissioner reaches this conclusion primarily on the basis (1) that the existing laser room contains only 72 square feet (8 x 9); (2) that out-patient hospitals require licensure; (3) that licensure requires compliance with physical plant regulations promulgated in 12 VAC Part 5, Chapter 410; (4) and that those regulations require for outpatient hospitals a minimum of 288 square feet for "operating rooms," 160 square feet in a room "reserved for minor local excisions," and 120 square feet for treatment rooms used for "minor surgical procedures."[2] In short, the Commissioner maintains, one cannot replace a presently existing spatially non-compliant operating room with a new one, even if the new one will meet the spatial requirements.

Succinctly stated, VEI responds: (1) that Va. Code § 32.1-102.1 defines project to include an addition in the "number" of operating rooms; (2) that VEI already has five operating rooms; (3) that as the Adjudication Officer found surgery has been performed in these five rooms since at least 1982, when Va. Code § 32.1-102.1 was amended to include an increase in the number of operating rooms as a "project"; (4) that accordingly their proposed expansion does not increase the number of operating rooms; and (5) that the Commissioner has without statutory authority grafted regulatory licensure size requirements onto the definition of operating room.

VEI also points out that in annual licensure applications and in surveys it has always responded that it has five operating rooms and documents that that fact has been known to the Department of Health for a number of years. Finally, VEI maintains that the Commissioner permitted Rockingham Memorial Hospital to replace existing operating rooms not meeting the spatial

---

[2]  12 VAC § 5.410-840(c)(8) and 12 VAC § 5-410-1400C.

requirements with new operating rooms, precisely as VEI seeks, rather than calling them additions. The Adjudication Officer responds to this final argument as follows:

> I have determined that the Department of Health made an uncorrectable error in the application of the COPN law when it allowed [Rockingham Memorial Hospital] to replace a laser surgery room, which did not meet the regulatory requirements to be called an "operating room" with a general purpose operating room. (p. 00019.)

Accordingly, this court concludes, as apparently the Adjudication Officer likewise concluded, that the issue here for review is one of the application of COPN law, not one of fact.

In *Carter v. Gordon,* 28 Va. App. 133, 142, 502 S.E.2d 697, 702 (1998), the court stated: "In an appeal to the circuit court from a decision by an agency, the burden is upon the appealing party to demonstrate error. See, *State Board of Health v. Godfrey,* 223 Va. 423, 432-33, 290 S.E.2d 875, 879-80 (1982)." Va. Code § 9-6.14:17 states in part:

> The burden shall be upon the party complaining of agency action to designate and demonstrate an error of law subject to review by the court. Such issues of law include ... (ii) compliance with the statutory authority, jurisdictional limitations, or right as provided in the basic laws ... .

In *Fairfax Surgical Ctr. v. State Health Commissioner,* 12 Va. App. 576, 579, 405 S.E.2d 430, 432 (1991), the court summarized the standard of judicial review of an alleged error of law:

> "The question whether an agency decision-making body acted within the scope of the authority conferred upon it by statute is a question of law." *Muse v. Virginia Alcohol Control Board,* 9 Va. App. 74, 78, 384 S.E.2d 110, 112 (1989). "Where the issue falls outside of the specialized competence of the agency, such as constitutional and statutory interpretation [*sic*] issues, little deference is required to be accorded the agency decision." *Johnston-Willis, Ltd. v. Kenley,* 6 Va. App. 231, 246, 369 S.E.2d 1, 9 (1988).

The *Fairfax Surgical* court further stated that:

> Under established principles we note that "[n]on-technical words in statutes are taken to have been used in their ordinary sense and acceptation." *Smith v. Commonwealth,* 3 Va. App. 650, 655, 353 S.E.2d 159, 159, 161 *app. refused,* 363 S.E.2d 703 (1987) (quoting *Board of Supervisors v. Boaz,* 176 Va. 126, 130, 10 S.E.2d 498, 499 (1940) … [citations omitted] … . We find that the term "bed" as used in the statute is an ordinary and non-technical word which is not synonymous with the term "operating room." Had the General Assembly intended to define bed in such a manner, it could have done so.

12 Va. App. at 580, 405 S.E.2d at 435.

"Operating room" is likewise an ordinary and non-technical term. An "operating room" is a room used for an operation and an operation is "A procedure for remedying an ailment, injury, or dysfunction in a living body, esp. one performed with instruments." *Webster's II New Riverside University Dictionary* (1984 ed.), p. 824. A later edition defines "operating room" as a "room in which surgical operations are performed." *The New Lexicon Webster's Dictionary of the English Language* (Lexicon Publications, 1988), p. 703.

The General Assembly could have defined "operating room" so as to include spatial requirements or delegated the determination of a definition to the Commissioner. It did neither. As noted above, the Department of Health has repeatedly licensed VEI as a medical care facility with five existing operating rooms. VEI seeks to replace one of those operating room with another. VEI does not seek an additional operating room and, accordingly, does not require a COPN to do so. To hold otherwise would, as VEI maintains, permit the Commissioner to add to the clear statutory language of Va. Code § 32.1-102.1 specific spatial requirements for operating rooms. Though he now maintains it was an error of law, the Commissioner permitted Rockingham Memorial Hospital to do precisely what VEI now requests. This court concludes that the decision by the Commissioner in the Rockingham Memorial Hospital dispute was a correct application of the COPN law.